**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

_____
                        )
MICHAEL BOSWELL,          )
                        )
          Plaintiff,     )     Civil Action No. 08-5098 (GEB)
                        )
v.                     )
                        )     **MEMORANDUM OPINION**
STEVE EOON, KIRSTEN BYRNES,  )
CHRISTINA EICKMAN, PTL. JAMES )
FEISTER, NEW BRUNSWICK POLICE )
DEPARTMENT, CITY OF NEW BRUNSWICK, )
and JOHN DOES (#1-5)        )
                        )
          Defendants.   )
_____)

**BROWN, Chief Judge**

      This matter comes before the Court upon the motion for summary judgment filed by Defendants the City of New Brunswick and Patrolman James Feaster ("Feaster"), a New Brunswick Police officer (collectively "Defendants")[1]. (Doc. No. 22.) Plaintiff Michael Boswell ("Boswell") opposes the present motion. (Doc. No. 35.) The Court has considered the parties' submissions and decided the matter without oral argument pursuant to Federal Rule of Civil Procedure 78. For the reasons that follow, the Court will grant Defendants' present motion for summary judgment and close this case.

## I.      BACKGROUND

###       A.      Facts

---

[1]Patrolman James Feaster was incorrectly named in the complaint as James Feister.

The following facts are undisputed unless otherwise noted.  On the night of September 4, 2005, Officer Feaster entered New Brunswick's Boyd Park (the "park") in his patrol car and drove through the park along a paved road.  (Pl.'s 56.1 Stmt. at ¶¶ 12, 14; Doc. No. 35; Defs.' 51.6 Stmt. at ¶¶ 12, 14; Doc. No.28.)   Officer Feaster saw a figure sitting on a picnic table, and in response, activated his spotlight and approached the table.  (*Id.* at ¶ 17.)  Officer Feaster walked up to the individual sitting at the table and asked him for identification.  (*Id.* at ¶ 19.)  The individual, Plaintiff Michael Boswell, presented an identification card that provided Boswell's name, Boswell's address of 5 Elm Row, New Brunswick, and a social security number.  (*Id.* at ¶¶ 22, 23)  Officer Feaster then ran a warrant check on Boswell.  (*Id.* at ¶ 25.)  After the warrant check came back negative, Officer Feaster issued and handed a summons to Boswell for being in the park after hours in violation of City Ordinance 12:28:010.  (*Id.* at ¶ 26.)  Officer Feaster then told Boswell that he had to leave the park.  (*Id.* at ¶ 27.)   Thereafter, Boswell started to go toward the canal that bordered the park on one side.   In response, Officer Feaster again told Boswell he would have to leave the park and directed him toward an egress point at Commercial Avenue.  (*Id.* at ¶¶ 29, 31, 32.)  As Boswell walked away, Officer Feaster observed Boswell rip up the ticket he had been given.  (*Id.* at ¶ 37.)  After Boswell walked away, Officer Feaster saw an empty quart bottle of alcohol under the bench where Boswell was sitting.  (*Id.* at ¶ 34.)  Officer Feaster had not observed Boswell drinking from the bottle, but believed that he had been drinking from it.  As a result, Officer Feaster wrote Boswell a ticket for having an open container of beer in the park.  (*Id.* at ¶ 39.)

Some time later, Officer Feaster heard a radio dispatch advising him of an accident at the intersection of Route 18 and Commercial Avenue.  (*Id.* at ¶ 46.)  When he arrived at the scene

there were two vehicles in the intersection and a person who was identified as Boswell under one of the cars.  (*Id.* at ¶ 48.)  Boswell was taken to Robert Wood Johnson University Hospital after the accident where he was found to have a blood alcohol concentration of .24%.  (*Id.* at ¶ 56.)

At all times during Officer Feaster and Boswell's interaction, Boswell appeared to understand and was cooperative with Officer Feaster.  (*Id.* at ¶ 42.)  Boswell responded immediately and appropriately to all commands and his speech was clear and coherent.  (*Id.*)  Officer Feaster was standing five feet from Boswell when he gave him the summons.  (*Id.* at ¶ 27.)  His physical coordination was controlled and balanced, and Officer Feaster did not detect any odor of alcohol.  (*Id.*)  Officer Feaster did not observe Boswell having any difficulty walking.  (*Id.* at ¶ 41.)  Based on his training and experience Officer Feaster made sufficient observations of Boswell and determined he was not intoxicated.  Officer Feaster chose not to arrest Boswell because he had identification, did not appear incapacitated by alcohol and was not a danger to himself or others.  (*Id.* at ¶ 45.)

## II.     DISCUSSION

Defendants argue that they are entitled to a judgment as a matter of law because: (1) Boswell cannot substantiate all elements of the state created danger theory of liability under 43 U.S.C. § 1983 (Pl.'s Br. 24; Doc. No. 28.); (2) Officer Feaster's actions are protected by qualified immunity (*Id.* at 35); (3) Boswell cannot establish the elements of a *Monell* claim (*Id.* at 17); and (4) the New Brunswick Police Department is not a proper defendant because it is not an entity separate from the municipality (*Id.* at 16).

### A.     Standard of Review

A party seeking summary judgment must "show that there is no genuine issue as to any

material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Hersh v. Allen Prods. Co., Inc.*, 789 F.2d 230, 232 (3d Cir. 1986). The threshold inquiry is whether there are "any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (noting that no issue for trial exists unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict in its favor). In deciding whether triable issues of fact exist, the court must view the underlying facts and draw all reasonable inferences in favor of the non-moving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Pa. Coal Ass'n v. Babbitt*, 63 F.3d 231, 236 (3d Cir. 1995); *Hancock Indus. v. Schaeffer*, 811 F.2d 225, 231 (3d Cir. 1987).

**B.    Application**

*1.    The State Created Danger Theory of Liability Under 42 U.S.C. § 1983*

First, Defendants argue that summary judgment should be granted because Boswell cannot substantiate all elements of the state created danger theory of liability under 42 U.S.C. § 1983. "[T]o establish a claim under 42 U.S.C. § 1983, a plaintiff must demonstrate a violation of a right secured by the Constitution and the laws of the United States and that the alleged deprivation was committed by a person acting under color of state law." *Mark v. Borough of Hatboro*, 51 F.3d 1137, 1141 (3d Cir. 1995) (quoting *Moore v. Tartler*, 986 F.2d 682, 685 (3d Cir. 1993)). The Due Process Clause alone does not generally impose an affirmative duty to protect a citizen who is not in state custody. *Bright v. Westmoreland County*, 443 F.3d 276, 281 (3d Cir. 2006) (citing *DeShaney v. Winnebago Cty. Soc. Servs. Dep't*, 489 U.S. 189, 201 (1989)).

4

However, "when the harm incurred is a direct result of state action, liability can attach under §
1983" using the state created danger theory. *Ye v. United States*, 484 F.3d 634, 637 (3d Cir.
2007) (citing *Kneipp v. Tedder*, 95 F.3d 1199 (3d Cir. 1996)).  A state created danger claim
requires: (1) the harm ultimately caused was foreseeable and fairly direct; (2) a state actor acted
with a degree of culpability that shocks the conscience; (3) a relationship between the state and
the plaintiff existed such that the plaintiff was a foreseeable victim of the defendant's acts, or a
member of a discrete class of persons subjected to the potential harm brought about by the state's
actions, as opposed to a member of the public in general; and (4) a state actor affirmatively used
his or her authority in a way that created a danger to the citizen or that rendered the citizen more
vulnerable to danger than had the state not acted at all.  *Ye*, 484 F.3d at 638.

In this case, the Court agrees with the Defendants that Boswell cannot establish at least
the second element noted above as a matter of law, and therefore, summary judgment for
Defendants on Boswell's § 1983 claim will be granted.  As noted, the second element of the state
created danger doctrine analysis requires that a state actor acted with a degree of culpability that
shocks the conscience.  *Patrick v. Great Valley Sch. Dist.*, 296 Fed. Appx. 258, 261 (3d Cir.
2008).  In situations such as this case, where the state actor has ample time for deliberation
before engaging in the allegedly unconstitutional conduct, "deliberate indifference" is sufficient
to support culpability.  *Patrick v. Great Valley Sch. Dist.*, 296 Fed. Appx. 258, 261 (3d Cir.
2008) (citing *Phillips v. County of Allegheny*, 515 F.3d 224, 240 (3d Cir. 2008)).  Deliberate
indifference requires more than negligence.  *County of Sacramento*, 523 U.S. 833, 849 (1998).  It
is equivalent to recklessly disregarding a known risk of harm.  *Farmer v. Brennan*, 511 U.S. 825,
836 (1994).

5

Here, the undisputed facts make clear that no reasonable factfinder could conclude that Officer Feaster's actions meet the standard of deliberate indifference.  It is undisputed that on September 4, 2005, Officer Feaster encountered Boswell in the park after dark, issued him a summons, and instructed him to leave the park.  (Pl.'s 51.6 ¶¶ 12, 26, 28; Doc. No. 35; Defs.' 51.6 ¶¶ 12, 26, 28 )   At the time, Officer Feaster observed Boswell to be cooperative, responsive, and controlled.  (Pl.'s 56.1 ¶ 42; Doc. No. 35; Def. 51.6 ¶ 42; Doc. No. 28.)  Based on his training and experience, Officer Feaster determined that Mr. Boswell was not intoxicated.  (Plf.'s 56.1 ¶ 43; Def. 51.6 ¶ 43.)  Because both parties agree that Officer Feaster did not know Boswell was intoxicated when he directed him to leave the park, Officer Feaster did not know of and disregard a risk to Boswell's safety.  Notably, this is not a situation like *Kneipp*, where the plaintiff provided evidence that the police officers knew Kneipp was intoxicated and incapacitated, but allowed the plaintiff to walk home alone.  95 F.3d at1208-09.  Rather, in this case, Officer Feaster was unaware of Mr. Boswell's intoxicated state, and as a result, the Court concludes that no reasonable factfinder could decide that by asking Mr. Boswell to leave the park, Officer Feaster acted with a degree of culpability which shocks the conscience.  Therefore, because Boswell cannot satisfy at least the second requisite element of the state created danger doctrine as a matter of law, Boswell's claim under 42 U.S.C. § 1983 fails.

### 2. Qualified Immunity

Defendants also move for summary judgment on Boswell's § 1983 claim on the ground that Officer Feaster's actions are protected by the doctrine of qualified immunity.  The Court agrees, and concludes that the doctrine of qualified immunity also defeats Boswell's § 1983 as a matter of law.  "Qualified immunity shields government officials from liability for civil damages

6

'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Dancy v. Collier*, No. 07-4329, 266 Fed. Appx. 102, 2008 U.S. App. LEXIS 3693, at *5 (3d Cir. Feb. 20, 2008), quoting *Harlow v. Fitzgerald*, 457 U.S. 800 (1982).  "The inquiry into the applicability of qualified immunity is twofold: (1) whether the plaintiff demonstrated the deprivation of a constitutional right, and (2) whether that right was established at the time of the alleged deprivation." *Dancy*, at *5, citing *Saucier v. Katz*, 533 U.S. 194, 201, 121 S. Ct. 2151, 150 L. Ed. 2d 272 (2001).  "This immunity is broad in scope and protects all but the plainly incompetent or those who knowingly violate the law." *Curley v. Klem*, 499 F.3d 199, 206 (3d Cir. 2007), quoting *Couden v. Duffy*, 446 F.3d 483, 501 (3d Cir. 2006) (Weis, J. dissenting).

The Court first addresses the first part of the qualified immunity analysis.  Here, Boswell alleges that Officer Feaster violated Boswell's right to substantive due process under the Fourteenth Amendment, including Boswell's alleged liberty interest in his personal security. (Pl.'s Compl. at 4; Doc. No. )  Defendants argue Boswell cannot demonstrate Officer Feaster actually violated a constitutionally protected right.  (Defs' Br. At 39; Doc. No. 28.)  The Court agrees.  As established above, Boswell cannot establish a constitutional violation under the state created danger doctrine as a matter of law.  Therefore, because the Due Process Clause does not create an affirmative duty to protect a citizen in this case, Boswell has not established that Officer Feaster's actions deprived Boswell of a constitutional right.

Next, the second step of the qualified immunity analysis looks at whether the constitutional right violated was clearly established, or, in other words, "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted."

*Saucier*, 533 U.S. at 201-02.  In this case, the parties have agreed Officer Feaster did not arrest Mr. Boswell because he had identification, did not appear to be incapacitated by alcohol, and was not a danger to himself or others.  (Pl.'s 56.1 ¶ 45; Doc. No.; Defs.' 51.6 ¶ 45; Doc. No. )  It is undisputed that Officer Feaster did not believe Mr. Boswell to be intoxicated.  (Id. at ¶ 43.) Thus, in light of the situation Officer Feaster confronted, a reasonable officer would not have known that directing someone to leave a park violated a clearly established constitutional right. In sum, because Boswell's claim fails both elements of the qualified immunity analysis, Officer Feaster's actions are protected under qualified immunity and he cannot be held liable for civil damages in this case.

### 3. Boswell's *Monell* Claim

Defendants next move for summary judgment on Boswell's claims for damages against the City of New Brunswick, and argue that those claims are barred under *Monell v. Department of Social Services, City of New York*, 436 U.S. 658 (1978).  (Defs.' Br. at 17; Doc. No. 28.) *Monell* held that "Congress did not intend municipalities to be held liable unless actions pursuant to official municipal policy of some nature caused a constitutional tort."  *Monell*, 436 U.S. at 691.  Further, "a municipality cannot be held liable solely because it employs a tort feasor."  *Id.* Clarifying this doctrine, the Third Circuit has held "municipal liability for failure to train cannot be predicated  solely on a showing that the City's employees could have been better trained." *Colburn v. Upper Darby Township*, 946 F.2d 1017, 1029-30 (3d Cir. 1991).  To establish a claim for failure to train, the plaintiff must: (1) identify specific training not provided that could reasonably expect to prevent the alleged constitutional violation; and (2) demonstrate that the risk reduction associated with the proposed training is so great and so obvious that the failure of those

8

responsible for the content of the training program to provide it can reasonably be attributed to a deliberate indifference to the rights of those in similar situations as the plaintiff.  *Id.* at 1030.

In this case, Boswell claims that the New Brunswick Police Department violated his civil rights by failing to train and/or supervise its officers and employees regarding the proper care of intoxicated and homeless persons.  (Pl.'s Compl. at 6; Doc. No.)  However, it has been established above that Boswell cannot establish a constitutional violation.  Thus, without a constitutional violation there cannot be any liability imposed upon the City and Police Department.  As such, Boswell's claims against the City of New Brunswick fail as a matter of law.

### 4.  Boswell's State Law Claims

It is undisputed that federal subject matter jurisdiction in this case exists as a result of the federal questions presented by Boswell's 42 U.S.C. § 1983 claim and his ancillary *Monell* claim. Above, however, the Court granted summary judgment in favor of Defendants on both of those federal claims.  Therefore, Boswell's federal claims have been resolved.  In light of the absence of any federal claim, the Court will not exercise supplemental jurisdiction over Boswell's state law claims pursuant to 28 U.S.C. § 1367.  A District Court, pursuant to 28 U.S.C. § 1367(c)(3), "may decline to exercise supplemental jurisdiction over a claim . . . if . . . (3) the district court has dismissed all claims over which it has original jurisdiction." *Edlin Ltd. v. City of Jersey City*, No. 07-3431, 2008 U.S. Dist. LEXIS 41118, at *24 (D.N.J. May 23, 2008) (citing *Atkinson v. Olde Economie Fin. Consultants, Ltd.*, No. 05-772, 2006 U.S. Dist. LEXIS 54289, at *5 (W.D. Pa. Aug. 4, 2006)).  This determination is discretionary and "[t]he general approach is for a

district court to . . . hold that supplemental jurisdiction should not be exercised when there is no longer any basis for original jurisdiction." *Id.*; *see also City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 172 (1997) ("pendent jurisdiction 'is a doctrine of discretion, not of plaintiffs right,' and that district courts can decline to exercise jurisdiction over pendent claims for a number of valid reasons") (citing *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966)). Applying this standard to the procedural posture in this case, the Court shall decline in its discretion to exercise supplemental jurisdiction over Boswell's remaining state law claims.

## III.    CONCLUSION

For the foregoing reasons, the Court will GRANT Defendants' present motion for summary judgment and decline supplemental jurisdiction over Boswell's remaining state law claims.  (Doc. No. 22.)  In light of that decision, the other parties' pending summary judgment motions are MOOT and will be DENIED as such.  (Doc. Nos. 25, 30)  Finally, the Court will order the Clerk of the Court to CLOSE this case.

Dated: June 8, 2010

                                     /s/ Garrett E. Brown, Jr.
                                     GARRETT E. BROWN, JR., U.S.D.J.