NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

MICHAEL BOSWELL, an incapacitated
Person, by his Guardian Ad Litem, Ethel
Boswell and Ethel Boswell, Individually,

          Plaintiffs,

    v.

STEVE EOON, *et al.*,

          Defendants.

Civil Action No. 08-5098 (MAS) (LHG)

**MEMORANDUM OPINION**

**SHIPP, District Judge**

This matter comes before the Court upon Defendants Patrolman James Feaster,[1] City of New Brunswick and New Brunswick Police Department's (collectively, "Defendants") Motion for Summary Judgment. (Defs.' Mot., ECF No. 78.) Plaintiffs Michael Boswell ("Boswell") and Ethel Boswell (collectively, "Plaintiffs") filed Opposition to the motion (Pls.' Opp'n, ECF No. 81), and Defendants replied (Defs.' Reply, ECF No. 83). The Court has carefully considered the Parties' submissions and decided the matter without oral argument pursuant to Local Civil Rule 78.1. For the reasons stated below, and for other good cause shown, Defendants' motion is GRANTED IN PART and DENIED IN PART. Specifically, the Court grants summary judgment to the City of New Brunswick and the New Brunswick Police Department on Plaintiffs' civil rights claims and denies summary judgment in all other respects.

---

[1] Patrolman Feaster was mistakenly identified as Patrolman "Feister" in the Second Amended Complaint. *See Boswell v. Eoon*, 452 F. App'x 107, 107 n.1 (3d Cir. 2011).

I.  **Background & Procedural History**

   A.  **Relevant Facts**

The parties agree that the following events gave rise to this action. At 1:50 a.m. on September 4, 2005, Patrolman Feaster of the New Brunswick Police Department was patrolling Boyd Park in New Brunswick, New Jersey. Boswell sat at a picnic table in the park, which was closed to visitors at that hour.

Approaching, Patrolman Feaster asked for Boswell's identification. Boswell complied, producing a card with a name, address, and date of birth. After determining that there were no warrants for Boswell's arrest, Patrolman Feaster issued Boswell a summons and ordered him to leave the park. Rising, Boswell set off in the direction of the canal that marked Boyd Park's eastern boundary. Observing this, Patrolman Feaster directed Boswell to head toward the park's western exit, located at the intersection of Route 18, which runs along the western boundary of the park, and Commercial Avenue.

As Boswell walked away, Patrolman Feaster noted there was an open bottle of alcohol under the picnic table where Boswell had been seated. Assuming the bottle was Boswell's, Patrolman Feaster returned to his car to prepare a second summons, which he intended to serve on Boswell by mail.

In the meantime, Boswell walked out of the park and into oncoming traffic on Route 18, where he was struck by two vehicles and sustained grave injuries. Tests performed after the accident revealed that he had a .24% blood alcohol concentration.

   B.  **The Second Amended Complaint**

The Second Amended Complaint ("Complaint"), in relevant part, asserts claims under 42 U.S.C. § 1983 and New Jersey state law against Patrolman Feaster and his employers, the City of

New Brunswick and the New Brunswick Police Department.[2] (Compl., ECF No. 17).

Count Two claims negligence on the part of Patrolman Feaster and the Municipal Defendants. Plaintiffs contend that Patrolman Feaster had a duty to render assistance to Boswell, whom Patrolman Feaster knew or should have known was intoxicated and homeless. (Compl. Count 2 ¶¶ 2-3, 7.) In ordering Boswell to leave the park unassisted, Plaintiffs assert, Patrolman Feaster failed to exercise this duty, thereby causing Boswell's injuries. (*Id.* at ¶¶ 12, 14.) Plaintiffs claim the Municipal Defendants are liable for failing to supervise and properly train Patrolman Feaster. (*Id.* at ¶ 13.)

Count Three is a § 1983 claim against Patrolman Feaster. (Compl. Count 3 ¶¶ 2-7.) Plaintiffs allege Patrolman Feaster violated Boswell's substantive due process right to "personal security" when he ordered the intoxicated Boswell to leave the park, "knowing that he would have to cross a busy highway." (*Id.* at ¶ 3.) Defendants do not seek summary judgment on Count Three.

In Count Four, Plaintiffs seek to hold the Municipal Defendants liable under § 1983. Plaintiffs allege the Municipal Defendants' failure to "train and/or supervise" police officers regarding "the proper care of intoxicated [and homeless] persons" caused Patrolman Feaster to violate Boswell's civil rights. (Compl. Count 4 ¶¶ 1-6.)

Count Five sets forth a claim against both Patrolman Feaster and the Municipal Defendants under the New Jersey Civil Rights Act ("NJCRA"), N.J. Stat. Ann. § 10:6-2. (Compl. Count 5 ¶¶ 1-6.) In Count Six, Ethel Boswell seeks to recover for Boswell's "past and future medical and nursing bills incurred and to be incurred for the . . . treatment of her son." (Compl. Count 6 ¶ 3.)

---

[2] The Court will treat the City of New Brunswick and its Police Department as the same entity, referring to them collectively as the "Municipal Defendants." *See, e.g.*, *Bonenberger v. Plymouth Twp.*, 132 F.3d 20, 25 n.4 (3d Cir. 1997).

3

In the pending motion, Defendants seek summary judgment on Counts Two, Four, and Five.

C. **The Third Circuit's Decision**

Defendants filed the present motion following remand from the Third Circuit, which vacated Chief Judge Garret E. Brown Jr.'s order granting Defendants' first motion for summary judgment. *See Boswell v. Eoon*, 452 F. App'x 107 (3d Cir. 2011). The prior appeal arose from a June 2010 Memorandum Opinion (Op., ECF No. 41) in which Judge Brown found that because "Feaster did not know Boswell was intoxicated when he directed him to leave the park," no jury could conclude that Patrolman Feaster acted with the "deliberate indifference" necessary to sustain Plaintiffs' cause of action under § 1983. (Op. 5-6).[3] The Third Circuit disagreed, holding that "a reasonable factfinder could determine that Boswell appeared to be visibly intoxicated and that [Patrolman] Feaster was deliberately indifferent to Boswell's safety in directing him to leave the park . . . by means of a perilous highway." *See Boswell*, 452 F. App'x at 113.

II. **Legal Standard**

Summary judgment is appropriate if the record shows "that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A district court considers the facts drawn from the "materials in the record, including depositions, documents, electronically stored information, affidavits . . . or other materials" and must "view the inferences to be drawn from the underlying facts in the light most favorable to the party opposing the motion." Fed. R. Civ. P. 56(c)(1)(A); *Curley v. Klem*, 298 F.3d 271, 276-77 (3d Cir. 2002) (internal quotations omitted). The Court must determine "whether the evidence

---

[3] Reasoning that the Municipal Defendants' § 1983 liability was derivative of Patrolman Feaster's, Judge Brown also dismissed Count Four of the Complaint. (Op. 8-9.) Judge Brown declined to exercise supplemental jurisdiction over Plaintiffs' remaining state-law claims. (*Id.* at 9-10.)

4

presents a sufficient disagreement to require submission to a [trier of fact] or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby*, 477 U.S. 242, 251-52 (1986). More precisely, summary judgment should be granted if the evidence available would not support a jury verdict in favor of the non-moving party. *Id.* at 248-49. "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Id.* at 247-48.

## III. Analysis

### A. Municipal Defendants' § 1983 Liability

The Municipal Defendants move for summary judgment on Plaintiffs' § 1983 claim, arguing that no rational factfinder could attribute the alleged violation of Boswell's civil rights to a municipal policy or custom. (Defs.' Br. 18-24.) Plaintiffs counter that evidence of the Municipal Defendants' failure to "provide [police officers with adequate] training geared to identifying intoxicated persons" is sufficient to send the issue to the jury. (Pls.' Opp'n 36.)

#### 1. *Monell* Liability Under § 1983

Local governments are not vicariously liable under § 1983 for their employees' unconstitutional actions. *Monell v. Dept. of Soc. Svcs.*, 436 U.S. 658, 707-08 (1978). To impose § 1983 liability on a municipality, plaintiffs must prove that an "official municipal policy" or custom caused their injuries. *Id.* at 691; *Watson v. Abington Twp.*, 478 F.3d 144, 155 (3d Cir. 2007). Inadequate training constitutes an "official [] policy" when it evinces the municipal employers' "'deliberate indifference to the rights of persons with whom the [employees] come into contact.'" *Connick v. Thompson*, 131 S. Ct. 1350, 1359 (2011) (quoting *Canton v. Harris*, 489 U.S. 378, 388 (1989)). A "municipality's culpability for a deprivation of rights is at its most

5

tenuous where a claim turns on a failure to train." *Id.*; *see also Kelly v. Borough of Carlisle*, 622 F.3d 248, 265-66 (3d Cir. 2010).

To satisfy the "deliberate indifference" standard, a plaintiff ordinarily must prove "[a] pattern of similar constitutional violations by untrained employees." *Connick*, 131 S. Ct. at 1360. Where, as in this case, no such pattern is alleged, plaintiff must demonstrate that the putative constitutional violation was the "highly predictable consequence" of the defendant municipality's inadequate training program. *Id.* at 1361 (quoting *Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 409 (1997)).

### 2. Plaintiffs' § 1983 Claim Fails under *Monell*

Plaintiffs fail to set forth evidence upon which a rational jury could conclude that Boswell's injury was the highly predictable consequence of Municipal Defendants' failure to train police officers "to identify a person intoxicated in public." (Pls.' Opp'n 36-38, 40.) Assuming Patrolman Feaster's alleged failure to recognize or appropriately respond to Boswell's intoxication amounted to "deliberate indifference" for Boswell's personal safety, the Court finds no evidence that the Municipal Defendants' training program was the "moving force" behind the officer's conduct. *See Bryan Cnty.*, 520 U.S. at 408.

It appears that Patrolman Feaster could have prevented Boswell's injuries by taking him into custody or simply escorting him across the highway. Patrolman Feaster may possibly have taken one of these actions if the Municipal Defendants implemented the "biannual training on how to identify intoxicated persons" that Plaintiffs suggest. (Pls.' Opp'n 38.) But these suppositions merely confirm the accuracy of the Supreme Court's observation that every "§ 1983 plaintiff will be able to point to something the city 'could have done' to prevent the unfortunate

6

incident." *Canton*, 489 U.S. at 392. More is needed to sustain a claim for municipal liability under *Monell* and its progeny.

Lacking here is evidence that Boswell's injuries were the "'highly predictable consequence'" of shortcomings in the Municipal Defendants' training program. *See Kelly*, 622 F.3d at 265 (quoting *Berg v. Cnty. of Allegheny*, 219 F.3d 261, 276 (3d Cir. 2000)); *Connick*, 131 S. Ct. at 1365 (plaintiff must demonstrate that policymakers' failure to require "additional specified training . . . . amounted to *conscious disregard* for" civil rights). The link Plaintiffs attempt to establish—connecting the alleged violation of Boswell's civil rights with inadequate training on the "identif[ication of] intoxicated persons" (Pls.' Opp'n 36-38)—is far too tenuous to support a finding of deliberate indifference against the Municipal Defendants. To make such a finding, the factfinder would have to conclude that absent special training, it is not only possible for a police officer to believe an individual is sober when the individual is too inebriated to safely cross the street, but that there is "an inherently high risk" of such a mistake occurring. *Hernandez v. Borough of Palisades Park Police Dep't*, 58 F. App'x 909, 915 (3d Cir. 2009). The Plaintiffs have not produced evidence to support such a conclusion in this case.

In sum, Plaintiffs fail to draw the requisite connection between Patrolman Feaster's training and Boswell's injury. The Municipal Defendants are therefore entitled to judgment as a matter of law on Count Four of the Complaint.

### B. Municipal Defendants' Liability under the NJCRA

"The New Jersey Civil Rights Act is a state law corollary to 42 U.S.C. § 1983—it creates a private right of action for the violation of civil rights secured under the New Jersey Constitution." *Armstrong v. Sherman*, Civ. No. 09-716, 2010 WL 2483911, at *5 (D.N.J. June 4, 2010). For the reasons discussed in the preceding discussion of § 1983, the Court grants the

Municipal Defendants summary judgment on Plaintiffs' NJCRA claim. *See Trafton v. City of Woodbury*, 799 F. Supp. 2d 417, 433-34 (D.N.J. 2011).

### C. Municipal Defendants' Negligence Liability

The Municipal Defendants' cursory argument in favor of summary judgment on Boswell's state-law negligence claim is unpersuasive. Contrary to Defendants' suggestion (Defs.' Br. 24), Plaintiffs' burden on a negligence theory is not identical to their burden under § 1983. *Cf. Nicini v. Morra*, 212 F.3d 798, 812 (3d Cir. 2000) (*en banc*) (affirming dismissal of § 1983 claim against official whose conduct "amounted, at most, to negligence"). Plaintiffs' allegations of negligent training and supervision are properly left for the trier of fact. The Municipal Defendants' motion for summary judgment on Count Two of the Complaint is denied.

### D. State-Law Claims Against Officer Patrolman Feaster

Patrolman Feaster contends that various provisions of the New Jersey Tort Claims Act—specifically, N.J. Stat. Ann. §§ 59:3-2(b), 59:5-4, 59:3-3, 59:3-5—immunize him from liability on Plaintiffs' state-law claims. (Defs.' Br. 27.) The Court finds that Patrolman Feaster failed to establish his immunity under the cited provisions. Accordingly, Patrolman Feaster's motion for summary judgment on Count Two is denied.

#### 1. Immunity under Sections 59:3-2(b) & 59:5-4

Patrolman Feaster has failed to demonstrate his entitlement to immunity under Sections 59:3-2(b) and 59:5-4. Section 59:3-2(b), by its terms, applies only to "*legislative or judicial* action or inaction" and "*administrative action* or inaction of a *legislative or judicial nature*." N.J. Stat. Ann. § 59:3-2(b) (emphasis added). Boswell does not accuse Patrolman Feaster of acting (or failing to act) in a legislative, judicial, or administrative capacity. Patrolman Feaster's reliance on § 59:3-2(b) is therefore misplaced.

Section 59:5-4, which shields a public entity or employee from liability where it fails to provide adequate "police protection," is similarly inapplicable. New Jersey State courts have construed this provision to bar tort claims attacking "political decisions" regarding the number of police officers "a town should employ, how each [officer] should be equipped and whether a town should have any police at all." *Suarez v. Dosky*, 407 A.2d 1237, 1241 (N.J. Super. App. Div. 1979). Section 59:5-4 does not, however, "negate the common law duty of police officers to perform their duties adequately[.]" *Aversano v. Palisades Interstate Parkway Comm'n*, 832 A.2d 914, 925 (N.J. Super. App. Div. 2003). The allegations in this case are limited to Patrolman Feaster's allegedly negligent conduct during his encounter with Boswell. Thus, Patrolman Feaster is not entitled to immunity under § 59:5-4.

### 2. Immunity under Sections 59:3-3 & 59:3-5

Patrolman Feaster's bids for immunity under the remaining two provisions, N.J. Stat. Ann. §§ 59:3-3 and 59:3-5, present closer questions.

Section 59:3-3 immunizes "[a] public employee [who] acts in good faith in the execution or enforcement of any law." N.J. Stat. Ann. § 59:3-3. Patrolman Feaster is entitled to immunity under this provision if his "acts were objectively reasonable" or "performed [] with subjective good faith." *Nicini*, 212 F.3d at 815 (quoting *Canico v. Hurtado*, 676 A.2d 1083, 1085 (N.J. 1996)).

The Third Circuit's prior decision in this case precludes this Court from granting Patrolman Feaster summary judgment on the basis of § 59:3-3 immunity. The Third Circuit held that a jury could conclude Patrolman Feaster acted with the "deliberate indifference" to Boswell's safety. *Boswell*, 452 F. App'x at 112. Therefore, it follows that the jury could also reject Patrolman Feaster's claim of subjective good faith. Likewise, the Third Circuit's decision

9

to deny Patrolman Feaster qualified immunity, establishes the existence of an unresolved issue of fact regarding the objective reasonableness of Patrolman Feaster's conduct. *Id.* at 113 n.6; *see Mantz v. Chain*, 239 F. Supp. 2d 486, 508 (D.N.J. 2002) ("the same 'objective reasonableness' standard that is used to determine whether a defendant enjoys qualified immunity . . . is used to determine questions of good faith arising under N.J.S.A. § 59:3-3").

Section 59:3-5, the fourth and final provision cited in Defendants' papers, shields a public employee from liability for "an injury caused by . . . his failure to enforce any law." N.J. Stat. Ann. § 59:3-5. In contrast to § 59:3-3—which, as discussed above, offers immunity to the official whose actions were objectively reasonable or undertaken in good faith—§ 59:3-5 offers "absolute immunity," but its protection is only available where the official faces liability for his "non-action or [] failure to act in the enforcement of the law." *Bombace v. City of Newark*, 593 A.2d 335, 336 (N.J. 1991).

The Court finds that the "critical, causative event," *id.* at 339, giving rise to Plaintiffs' state-law claim was Patrolman Feaster's order "directing [Boswell] to leave the park at night," *Boswell*, 452 F. App'x at 113. This was an affirmative act of enforcement. As such, Patrolman Feaster is not entitled to summary judgment based on § 59:3-5.

## IV. Conclusion

For the reasons set forth above, and for other good cause shown, it is hereby ordered that Defendants' Motion for Summary Judgment is GRANTED IN PART and DENIED IN PART. Plaintiffs' claims against the Municipal Defendants under both § 1983 and the New Jersey Civil Rights Act are DISMISSED WITH PREJUDICE. The motion is denied in all other respects. An Order will be entered consistent with this Opinion.

/s/ Michael A. Shipp
MICHAEL A. SHIPP
UNITED STATES DISTRICT JUDGE

Dated: 10/30/13